## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALLISON SIWIEC-EUKER**

     **Plaintiff,**

**v.**                                  **CASE NO.:**

**TD BANK, N.A.,**                  **JURY TRIAL DEMANDED**

     **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Allison Siwiec-Euker ("Ms. Euker") makes the following allegations of discrimination and retaliation for her complaint against Defendant TD Bank, N.A. ("Defendant TD Bank").

### INTRODUCTION

1.    Ms. Euker is a wife and mother of two teenagers.  Ms. Euker's family relies on Ms. Euker's predictable income and benefits to support the family, as Ms. Euker's husband owns his own business, which income ebbs and flows.  Ms. Euker is responsible for the family's medical benefits and coverage, including for a dependent who has a long-diagnosed neurological disorder, which requires daily medication and occasional therapeutic support.

2.     In August 2021, Defendant TD Bank mandated all employees to adhere to its Covid-19 vaccination and registry policy as a condition of continuing their employment (the "Covid-19 Vaccine Policy").

3.     Defendant TD Bank offered a sliver of hope to Ms. Euker, a fully remote worker, that she would be permitted to continue to work at TD Bank without having to take the vaccine, enter her private medical information into a database, or wear protective equipment any time she went to the office.

4.     All hope was dashed when TD Bank terminated Ms. Euker on February 17, 2022.

5.     Ms. Euker lost not only her career, income, benefits, and bonuses; Ms. Euker was forced to cut her dependent's daily medication dose in half for fear of being unable to afford refilling the prescription.

6.     Based on Defendant TD Bank's implementation of its Covid-19 Vaccine Policy, including the requirement to enter vaccination status into a database, Defendant TD Bank's refusal to grant Ms. Euker's request to completely opt out, and subsequent termination of Ms. Euker, Ms. Euker asserts claims of discrimination and retaliation pursuant to Title VII and the Florida Private Whistleblower's Act.

## JURISDICTION AND VENUE

7.     Ms. Euker has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964, including filing a charge of religious discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and

receiving a right to sue letter from the EEOC, all in compliance with 42 U.S.C. § 2000e-5(f)(1).  The EEOC right to sue letter is attached as **Exhibit A**.

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Ms. Euker asserts claims arising under federal statute.  This Court further has supplemental jurisdiction over Ms. Euker's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court maintains personal jurisdiction over Defendant because Defendant's contacts with Florida and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

10.    Defendant TD Bank is subject to the provisions of Title VII because Defendant TD Bank is engaged in commerce and employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. § 2000e (b).

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1-2) because Defendant TD Bank conducts business in this judicial district and a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

12.    Plaintiff Allison Euker is a former employee of Defendant TD Bank and resides in Venice, Florida.

13.     Defendant TD Bank is a Delaware for-profit national association, which principal office is 2035 Limestone Road, Wilmington, Delaware, 19808, with a registered agent office located at 1201 Hays Street, Tallahassee, Florida, 32301.

## FACTS

### Ms. Euker worked for TD Bank for nearly eleven years, most recently as a Business Line Financial Manager III

14.     Ms. Euker, who has a master's of business administration in finance and international business, was hired by TD Bank in May 2011 as a Project Manager.

15.     Ms. Euker was classified as an-in office employee until March 2020.  In August 2021, Ms. Euker moved to Florida as a 100% remote employee with special approval from Defendant TD Bank.

16.     Ms. Euker worked in the Office of the Chief Financial Officer and was responsible for direct interactions with the Chief Financial Officer and his executive leadership team.  Until December 2021, Ms. Euker assisted the division titled "U.S. Finance Communications and Learning Development;" in December 2021, Ms. Euker's role transitioned to "U.S. Finance Executive Program Manager."

17.     In addition to other assignments, Ms. Euker assisted with the strategy, data gathering, and other planning operations for the U.S. Enterprise Real Estate Team on how to transition U.S. Finance employees from remote work back to working in the office.

18.     During this period of strategy, planning, and data gathering, TD Bank never discussed the vaccination status of the employees who would be transitioning back to working in the office as a requirement of returning.  Instead, the discussions revolved around topics such as what kind of office space was needed to accommodate the employees and how many would be working full-time or part-time in the office or fully remote.

19.     As a Business Line Financial Manager III, Ms. Euker was paid a base salary and benefits by Defendant TD Bank and was eligible for a bonus.

**Defendant TD Bank issued its Covid-19 Vaccination Policy**

20.     In July 2021, Defendant TD Bank attempted to coerce its employees to get the Covid-19 vaccine, providing up to four hours of paid time off to get vaccinated and an additional four hours if a second dose was required.

21.     For those who would not be so coerced (a small percentage of employees), in August 2021, Defendant TD Bank implemented a mandatory Covid-19 Vaccine Policy, stating that all employees should get vaccinated and required all employees to submit their vaccination status into a third party housed registry by December 2021 under threat of disciplinary action and/or termination.  No opt out from TD Bank's vaccine registry was made available.

22.     From August 2021 to February 2022, Ms. Euker received multiple emails from TD Bank leadership team members, including Global and U.S. Heads of Human Resources and the Chief Executive Officers of TD Bank and TD Bank

Group, encouraging compliance with TD Bank's Covid-19 Polikcy, including submitting to the Covid-19 vaccination.

23.     The stated purpose of Defendant TD Bank's Covid-19 Vaccine Policy was to promote the safety and well-being of TD colleagues, customers, and the communities in which TD operates in the belief that the Covid-19 vaccine was one of the best ways to protect workers and the "public."

24.     However, TD Bank did not require its customers to provide evidence of vaccination or register their vaccination status before entering its banking locations to directly engage with TD Bank employees.

### TD Bank's Vaccination Registry

25.     Defendant TD Bank's Covid-19 Vaccine Policy required all employees to submit their vaccination status to TD Bank's Covid-19 Vaccination Registry by December 2021.

26.     The registry was hosted and managed by a third party.

27.     No opt-out of the registry was available.  If an employee refused to be injected with the Covid-19 vaccine, the employee was required to disclose that information and enter it into TD Bank's Vaccination Registry under one of the following categories: "I prefer not to disclose," "I am partially vaccinated," or "I am not vaccinated."

28.     Any employee who did not provide a copy of his or her vaccination card or who entered "I prefer not to disclose," "I am partially vaccinated," or "I am not vaccinated," would be subjected to "additional health and safety protocols,

including the completion of a mandatory learning module about the benefits of vaccination, mandatory regular COVID-19 rapid testing, and wearing a mask at all times while working on TD premises."

29.    Failure to comply with the "requirement" to enter "vaccination status" into TD Bank's Vaccination Registry would "result in disciplinary action."

30.    Defendant TD Bank sent Ms. Euker emails in or around November 2021, warning her to comply with TD Bank's Covid-19 vaccination registry and to complete the "benefits of vaccination" learning module.  Defendant TD Bank informed Ms. Euker that if she did not register as "fully vaccinated," she would not be allowed into TD Bank buildings, and that if she did not complete the learning module, she risked termination.

31.    In November 2021, upon threat of termination, Ms. Euker completed the "benefits of vaccination" learning module, featuring TD Bank's Chief Medical Director, Dr. Vipan Nikore.  Ms. Euker communicated directly to her supervisor that she was coerced to complete the learning module and did not agree with its content.

32.    Although she requested it multiple times, Defendant TD Bank would not provide information to Ms. Euker detailing who managed and maintained TD Bank's Vaccine Registry, what would be done with that data, why TD Bank needed the data, how long the data would be stored, or who would have access to the data.

33.    Because TD Bank never explained why it was collecting her personal medical data nor who would have access to the data, Ms. Euker believed that Defendant TD Bank would use the data in the future to deny her employment

opportunities, advancements, travel, or other employment-related benefits.   Ms. Euker also feared that other entities might obtain access to the data and was not assured otherwise by Defendant TD Bank.

34.    Complying with TD Bank's mandate would have forced Ms. Euker to violate her personal autonomy, to ignore her own health provider's medical advice, and to relinquish her right to be free from unwanted intrusion into her personal life.

### TD Bank's Chief Medical Director

35.    Defendant TD Bank, which is obviously neither a hospital nor a clinic, has a Chief Medical Director, Dr. Vipan Nikore.

36.    The position of chief medical director is usually one that takes on "full responsibility for medical supervision as well as all other medical areas" in an "institutional healthcare system."  *See* "Difference Between Medical Director and Chief Medical Officer,"  http://www.differencebetween.net/miscellaneous/career-education/difference-between-medical-director-and-chief-medical-officer/  (accessed on January 23, 2023).

37.    Dr. Nikore did indeed seem to be taking responsibility for "medical supervision" at TD Bank, as he provided medical advice to the employees of TD Bank, including Plaintiff Allison Euker.

38.    One way in which Dr. Nikore provided medical advice to Plaintiff Allison Euker was through an "educational" video ("learning module") she was forced to watch – after declining the Covid-19 vaccine – in which Dr. Nikore gave his medical opinion regarding why TD Bank employees should get the vaccine.  TD

Bank distributed materials that continued to assert Dr. Nikore's so-called "expertise" regarding the Covid-19 vaccination.

39.    Dr. Nikore's medical opinion was in contradiction to the medical advice provided by Ms. Euker's healthcare provider.

**Plaintiff Allison Euker Had Strong Objections to Being Coerced Into Compliance with TD Bank's Covid-19 Vaccination Registry**

40.    Plaintiff Allison Euker refused to be injected with the experimental Covid-19 vaccine because she has extremely strong personal, religious beliefs in favor of personal bodily, moral, spiritual, and intellectual privacy and integrity and against coercion.  Ms. Euker's conscience, spurred by her deeply held moral, ethical, and religious beliefs against TD Bank's attempts at coercion, would have given her no rest if she had succumbed to TD Bank's discriminatory, unethical, and illegal Covid-19 Vaccine Policy.  Moreover, Plaintiff had natural immunity to Covid-19 and also skepticism, which has only strengthened over time with the ever-increasing body of evidence, that the vaccines were neither effective nor safe.

41.    The overall ineffectiveness of the vaccines is conceded by the CDC itself, as it now "recommends" a booster *every two months* for adults.  CDC Website, "Find    Out    When    You    Can    Get    Your    Booster," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html#adults, (last accessed on February 14, 2023) (emphasis added).

42.    In August 2021, prior to the enforcement of Defendant TD Bank's Covid-19 Vaccine Policy, the CDC Director, Dr. Rochelle Walensky, informed Wolf

Blitzer that the vaccines did not prevent transmission of the Delta variant.  Gateway Pundit article published on August 7, 2021, https://www.thegatewaypundit.com/2021/08/cdc-director-tells-cnn-covid-vaccines-cant-prevent-transmission-video/ (last accessed on February 14, 2023).

43.     The CDC's website acknowledges that those who are "up-to-date" with vaccinations (including the boosters every two months) are not "100%" protected from Covid-19 infection; the CDC no longer appears to even make the claim that vaccinations prevent transmission. CDC Website, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html, (last accessed on February 14, 2023.)

44.     Even according to the World Health Organization's assessment back in November 2021, the vaccinations were only 60% effective against transmission before the Delta variant, dropping down to 40% effective after the Delta variant. World Health Organization Website, Transcript of COVID-19 Virtual Press conference, https://www.who.int/publications/m/item/covid-19-virtual-press-conference-transcript---24-november-2021, (last accessed on February 14, 2023).

45.     Pfizer famously admitted in October 2022 that its vaccine was never tested for its ability to prevent transmission before market release.

46.     Courts across the country are increasingly noting the dearth of evidence that vaccines prevent transmission. *See, e.g. Garvey v. City of N.Y.*, 77 Misc. 3d 585, 2022 NY Slip Op 22335, ¶¶ 8, 180 N.Y.S.3d 476 (N.Y. Sup. Ct. Oct. 24, 2022) ("Being vaccinated does not prevent an individual from contracting or

transmitting Covid-19. . . . The vaccination mandate for City employees was not just about safety and public health; it was about compliance.")

47.    TD Bank's own Chief Medical Director, Dr. Nikore, acknowledged in January 2021 – one month prior to Ms. Euker's termination from TD Bank – that both the vaccinated and the unvaccinated were getting infected with Omicron, that Omicron appeared to be "less severe at baseline than Delta for the unvaxxed," and that natural immunity provides T-cell immunity.  "Omicron drives case counts to new highs in Canada," Moneytalk, BNN Bloomberg, https://www.bnnbloomberg.ca/money-talk/omicron-drives-case-counts-to-new-highs-in-canada~2354705 (last accessed on February 16, 2023).

48.    Yet Defendant TD Bank continued to threaten its employees into compliance with its Covid-19 Vaccine Policy and Registry.

49.    In the nearly eleven years Plaintiff Allison Euker had worked for TD Bank, she had never been required to provide any vaccination information (or any other protected medical information) as a condition of her employment.

50.    After Defendant TD Bank issued its Covid-19 Vaccine Policy, on multiple occasions, Plaintiff Allison Euker asked TD Bank to provide her with clarification on issues such as the intended use of the Covid-19 Vaccination Registry, who would have access to the Registry, what data security protocols would be applied to the Registry, how her personal information would be secured, and what regulation or statute required the Registry.

51.     Plaintiff Allison Euker asked several times for information regarding TD Bank's Vaccine Registry.

52.     On January 20, 2022, Ms. Euker responded to Dalya Levin, Senior Human Resources Manager of the Finance, Audit, Strategic Sourcing Group and Real Estate, stating that she would not be "coerced with threats of disciplinary action or termination by TD into sharing my personal medical information into a database for unknown use."  Plaintiff explained that her "medical information and decisions are confidential between me and my healthcare providers" and requested that "HR and TD leadership reconsider and stop this hostile employee policy."  Plaintiff Allison Euker also volunteered to "join any committee to discuss these policies with leadership to provide diversity of thought on these matters."

53.     The next day, Defendant TD Bank issued Ms. Euker a "Written Warning," which was a non-probationary disciplinary action regarding her refusal to enter her Covid-19 vaccination status into Defendant TD Bank's Vaccination Registry.

54.     Plaintiff Allison Euker received multiple "reminders" to register her "vaccination status in TD's vaccination registry," including an email on January 31, 2022, titled, "Immediate Action required: Vaccination Registry Incomplete," with yet another threat of termination.

55.     On February 4, 2022, Ms. Euker received a phone call from TD Bank Human Resources personnel Nicole Hagar indicating that Ms. Euker had 24 hours to enter her information into the Covid-19 Vaccination Registry or she would be

terminated.  During that phone conversation, Ms. Euker informed Nicole Hagar that she had several questions that were not answered in TD Bank's FAQ section and that required answering.

56.     Ms. Euker then, on the same day, emailed eleven questions to Nicole Hagar raising issues of privacy concerns with TD Bank's Vaccine Registry, the business purpose of the registry, whether the registry complied with applicable regulations and statutes, the accessibility of her data by third parties, and what possible justification TD Bank could supply for how her vaccination status was relevant to workplace safety when the data showed that transmission rates were the same regardless of vaccination status.

**Despite the absence of any undue hardship, Defendant TD Bank terminated Ms. Euker, which was discriminatory and in retaliation for objecting to TD Bank's unethical and illegal Covid-19 Vaccination Policy and Registration Requirement**

57.     On February 17, 2022, Defendant TD Bank terminated Ms. Euker because of her refusal to comply with getting the vaccine, which would have violated her deeply held personal, religious beliefs against being forced to inject herself with an experimental medicine that had neither been shown to be efficacious or safe.

58.     Defendant terminated Ms. Euker because she spoke out against having to enter her personal information into a database, for questioning what would be done with her data and by whom, and for raising legal and ethical concerns about Defendant TD Bank's Covid-19 Vaccine Policy, including the registry.

59.     All conditions precedent to bringing this cause have occurred, have been performed, or have been waived.

60.     Plaintiff Allison Euker has retained the undersigned attorney regarding the litigation and is obligated to pay reasonable attorney's fees.

## COUNT I

### RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. § 2000e

61.     Plaintiff Allison Euker restates and re-alleges the allegations of paragraphs 1 through 60 above.

62.     Defendant TD Bank is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

63.     Ms. Euker is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

64.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).

65.     "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

66.     "Religious practices" include not only formal tenets of an established religion but also "include all moral or ethical beliefs as to what is right and wrong

which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

67.     Ms. Euker is a Christian who has extremely strong beliefs regarding bodily and intellectual autonomy and integrity and the right as a person made in God's image to make medical decisions and choose what she takes into her body.

68.     These beliefs extend to the right not to be forced by others to take part in activities that violate her belief in the sanctity of personal physical and intellectual autonomy, including the right not to be coerced into giving up her personal data when no legitimate justification is provided.

69.     Ms. Euker holds these moral and ethical beliefs with the strength of traditional religious views; her beliefs in fact flow out of and are held in tandem with her religious convictions, beliefs, and practices.

70.     "[R]eligious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015).

71.     Defendant TD Bank violated Title VII when it terminated Ms. Euker because of her sincerely held religious beliefs that compelled her to resist TD Bank's authoritarian Covid-19 Vaccine Policy.

72.     Ms. Euker has a sincerely held religious belief that prevented her from complying with TD Bank's Covid-19 Vaccine Policy.

73.     Ms. Euker was an outstanding employee and valued member of her team.  No complaints were ever raised about her performance.

74.     Complying with Defendant TD Bank's Covid-19 Vaccine Policy was a condition of her continued employment.

75.     Ms. Euker informed Defendant TD Bank of her strongly held beliefs and requested that she be permitted to continue her job responsibilities without having to enter any data into TD Bank's Covid-19 registry or database.

76.     Defendant could have simply granted Ms. Euker's request for accommodation by permitting her to forgo entering any data into TD Bank's Covid-19 registry or database, but Defendant TD Bank refused.

77.     In contrast, TD Bank employees who did not exercise strong ethical and moral convictions against TD Bank's Covid-19 Vaccine Policy were permitted to continue working at TD Bank.

78.     Granting accommodations for non-religious reasons to "compliant" employees and denying accommodations for reasons that rise to the level or religious convictions constitutes discrimination in violation of Title VII.

79.     Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

80.     Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

81.     Despite the utter lack of an undue burden on Defendant TD Bank to accommodate Ms. Euker's request to forgo entering any response regarding her vaccine status into TD Bank's database, Ms. Euker was terminated after she refused to comply with TD Bank's Covid-19 policies.

82.     If Ms. Euker had set aside her religious beliefs and taken the Covid-19 vaccine and/or complied with the Covid-19 Vaccination Registry requirement, Defendant TD Bank would not have fired Ms. Euker.  Thus, her religious beliefs were a but-for cause of her termination.

83.     In the alternative, religion was a motivating factor in Ms. Euker's termination.

84.     Emails by TD Bank executives urging Ms. Euker to comply with TD Bank's Covid-19 Vaccine Policy constitute direct evidence of discrimination in violation of Title VII.

85.     Ms. Euker's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion.  § 2000e-2.  The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs.  § 2000e(j).

86.     Title VII prohibits Defendant TD Bank from scrutinizing what Defendant believes to be the sincerity of Ms. Euker's religious belief.

87.     Title VII also prohibits Defendant TD Bank from scrutinizing whether Ms. Euker's exercise of her beliefs is logical or as consistent as Defendant believes they should be.

88.     Requests for reasonable accommodation must be considered based on their individual, particularized circumstances; any claim of undue hardship by the employer must be assessed on a case-by-case basis rather than through application of a blanket rule.

89.     Defendant TD Bank applied a uniform, blanket rule in rejecting Ms. Euker's request for accommodation.

90.     As a direct result of Defendant TD Bank's discriminatory acts, Ms. Euker suffered a loss of employment, loss of income and employee stock units, loss of retirement benefits, loss of bonus, loss of seniority, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

   a. Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Allison Euker has suffered due to Defendant TD Bank's discriminatory acts;

   b. Compensatory damages representing Plaintiff Allison Euker's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant TD Bank's retaliatory practices;

   c. All costs and attorney fees incurred in litigating this action;

   d. Pre- and post-judgment interest; and

e.   Any other relief the Court deems just and proper.

## COUNT II

**RELIGIOUS DISCRIMINATION – DISPARATE IMPACT
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 2000e**

91.     Plaintiff Allison Euker restates and re-alleges the allegations of paragraphs 1 through 60 above.

92.     Defendant TD Bank is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

93.     Ms. Euker is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

94.     Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(2); *see also* 42 U.S.C. § 2000e-2(k).

95.     "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

96.     Ms. Euker has a sincerely held religious belief that prevented her from complying with TD Bank's Covid-19 Vaccine Policy.

97.     Ms. Euker is a Christian who has extremely strong beliefs regarding bodily and intellectual autonomy and integrity and the right as a person made in God's image to make medical decisions and choose what she takes into her body.

98.     These beliefs extend to the right not to be forced by others to take part in activities that violate that right to personal physical and intellectual autonomy.

99.     Ms. Euker holds these moral and ethical beliefs with the strength of traditional religious views; her beliefs in fact flow out of and are held in tandem with her religious convictions, beliefs, and practices.

100.     Complying with Defendant TD Bank's Covid-19 Vaccine Policy was a condition of her continued employment.

101.     Ms. Euker informed Defendant TD Bank of her strongly held beliefs and requested that she be permitted to continue her job responsibilities without having to enter any data into TD Bank's Covid-19 registry or database.

102.     Defendant could have simply granted Ms. Euker's request for accommodation by permitting her to forgo entering any data into TD Bank's Covid-19 registry or database, but Defendant TD Bank refused.

103.     Ms. Euker was an outstanding employee and valued member of her team.  No complaints were ever raised about her performance.

104.     Complying with Defendant TD Bank's Covid-19 Vaccine Policy was a condition of her continued employment.

105.     Defendant TD Bank's Covid-19 Vaccine Policy adversely classified religious employees like Ms. Euker who hold strong beliefs regarding freedom of moral, intellectual, and bodily autonomy.

106.     Employees with religious objections to TD Bank's Covid-19 Vaccine Policy were rendered unemployable as a result of those policies.

107.    Defendant TD Bank violated Title VII when it placed Ms. Euker into a disfavored class by issuing its Covid-19 Vaccine Policy, when it failed to approve her reasonable request for accommodation, and when it terminated her employment.

108.    Ms. Euker informed Defendant of her beliefs and requested that she be permitted to continue her job responsibilities without having to enter any information in TD Bank's Covid-19 registry or database and without having to wear personal protective equipment or be banished from the office.

109.    Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

110.    Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

111.    Despite the existence of alternatives with lesser discriminatory effects, Ms. Euker was terminated after she refused Defendant TD Bank's efforts to force her to comply with its Covid-19 Vaccine Policy.

112.    Ms. Euker's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion.  § 2000e-2.  The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs.  § 2000e(j).

113.    Title VII prohibits Defendant from scrutinizing what Defendant TD Bank believes to be the sincerity of Ms. Euker's religious belief.

114.    Title VII also prohibits Defendant from scrutinizing whether Ms. Euker's exercise of her beliefs is logical or as consistent as Defendant believes they should be.

115.    As a direct result of Defendant TD Bank's discriminatory Covid-19 Vaccine Policy, Ms. Euker suffered a loss of employment, loss of income and stock options, loss of bonus, loss of retirement benefits, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Allison Euker has suffered due to Defendant's discriminatory acts;

b.   Compensatory damages representing Plaintiff Allison Euker's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant's retaliatory practices;

c.   All costs and attorney fees incurred in litigating this action;

d.   Pre- and post-judgment interest; and

e.    Any other relief the Court deems just and proper.

**COUNT III**

**RETALIATION**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e**

116.     Plaintiff Allison Euker restates and re-alleges the allegations of paragraphs 1 through 60 above.

117.     Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

118.     Ms. Euker is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

119.     Under Title VII, it is an unlawful employment practice for an employer "discriminate against" an employee because she "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated" in a Title VII "investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).

120.     "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

121.     Ms. Euker is a Christian who has extremely strong beliefs regarding bodily and intellectual autonomy and integrity and the right as a person made in God's image to make medical decisions and choose what she takes into her body.

122.     These beliefs extend to the right not to be forced by others to take part in activities that violate that right to personal physical and intellectual autonomy.

123.     Ms. Euker holds these moral and ethical beliefs with the strength of traditional religious views; her beliefs in fact flow out of and are held in tandem with her religious convictions, beliefs, and practices.

124.     Ms. Euker was an outstanding employee and valued member of her team.  No complaints were ever raised about her performance.

125.     Defendant sent multiple communications to Ms. Euker urging her to get vaccinated and enter her personal health data into its database.

126.     Once Defendant TD Bank issued its Covid-19 Vaccine Policy, complying with those policies became a condition of her continued employment.

127.     Ms. Euker asserted during phone conversations and email exchanges with TD Bank Human Resources personnel that what TD Bank was requiring through its Vaccine Registry was not legal or ethical, as set forth above.

128.     Defendant rejected Ms. Euker's request for an accommodation to completely opt out of Defendant TD Bank's Covid-19 Registry and retaliated against her for submitting the request.

129.     Defendant violated Title VII when it terminated Ms. Euker's employment in retaliation for questioning TD Bank's Covid-19 Vaccine Policy and for objecting that TD Bank's policies were legally, morally, and ethically questionable.

130.     Ms. Euker informed Defendant of her belief and requested that she be permitted to continue her job responsibilities without having to comply with TD Bank's Covid-19 Vaccine Policy.

131.    Ms. Euker could have been accommodated without any cost whatsoever.

132.    Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

133.    Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

134.    Despite any burden to Defendant TD Bank to accommodate Ms. Euker's request, Ms. Euker was terminated for refusing to comply with Defendant's Covid-19 Vaccine Policy.

135.    Ms. Euker's termination was in violation of Title VII of the Civil Rights Act, which prohibits retaliation after an employee engages in protected activity. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

136.    Title VII prohibits Defendant from scrutinizing what Defendant believes to be the sincerity of Ms. Euker's religious belief.

137.    Instead of providing the readily available and reasonable accommodation requested by Ms. Euker, Defendant rejected Ms. Euker's request and instead terminated her for raising her concerns regarding Defendant's policies.

138.    As a direct result of Defendant's retaliatory and discriminatory acts, Ms. Euker suffered a loss of employment, loss of income and stock options, loss of retirement benefits, loss of bonus, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Allison Euker has suffered due to Defendant's retaliatory and discriminatory acts;

b.   Compensatory damages representing Plaintiff Allison Euker's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant TD Bank's retaliatory practices;

c.   All costs and attorney fees incurred in litigating this action;

d.   Pre- and post-judgment interest; and

e.    Any other relief the Court deems just and proper.

## COUNT IV

## VIOLATION OF THE FLORIDA PRIVATE EMPLOYER WHISTLEBLOWER ACT

139.    Plaintiff Allison Euker restates and re-alleges the allegations of paragraphs 1 through 60 above.

140.    This is an action against Defendant TD Bank pursuant to the Florida Private Whistleblower Act, Florida Statutes Sections 448.100-105 (2022).

141.    After Defendant, TD Bank, informed employees of its Covid-19 Vaccine Policy, including its Vaccine Registry, Ms. Euker complained to Defendant TD Bank that TD Bank's policy was illegal and unethical, as set forth above.

142.    Ms. Euker's complaints listed above were protected activity because Ms. Euker's speech included objections that Defendant TD Bank's Vaccine Registry was illegal and unethical.

143.    Ms. Euker refused to participate in the Vaccine Registry and refused to comply with TD Bank's unethical Covid-19 Vaccine Policy.

144.    Because Ms. Euker engaged in protected activity and refused to participate in TD Bank's Covid-19 Vaccine Policy, TD Bank terminated Ms. Euker's employment.

145.    As a direct result of Defendant TD Bank's retaliatory acts in violation of the Florida Private Whistleblower Act, Ms. Euker suffered a loss of employment, loss of income – including salary in addition to loss of bonus and employee stock units, loss of retirement benefits, loss of unemployment benefits, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff Allison Euker requests that the Court enter judgment in her favor and award her the following relief:

a.  Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Allison Euker has suffered due to Defendant TD Bank's discriminatory acts;

b.  Compensatory damages representing Plaintiff Allison Euker's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant TD Bank's retaliatory practices;

c.  Punitive damages representing Plaintiff Allison Euker's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant TD Bank's willful and malicious acts;

d.  All costs and attorney fees incurred in litigating this action;

e.  Pre- and post-judgment interest; and

f.  Any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

Ms. Euker demands trial by jury on all issues so triable.


Respectfully submitted February 16, 2023.

> CAMPBELL TROHN
> TAMAYO & ARANDA, P.A.
>
> /s/ Jennifer Vasquez
> JENNIFER VASQUEZ
> Fla. Bar No. 71942
> ROBERT ARANDA

Fla. Bar No. 988324
P.O. Box 2369
Lakeland, FL 33806
Tel: (863) 686-0043
Fax: (863) 616-1445
j.vasquez@cttalaw.com
r.aranda@cttalaw.com
ATTORNEYS FOR PLAINTFF